UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------x
SAMUEL EICHENSTEIN,

                Plaintiff,

- against -

COMMISSIONER OF SOCIAL SECURITY,

                Defendant.
---------------------------------------------------------x

**MEMORANDUM & ORDER**
20-CV-4397 (PKC)

PAMELA K. CHEN, United States District Judge:

Plaintiff Samuel Eichenstein ("Plaintiff" or "Eichenstein") filed this action pursuant to 42 U.S.C. § 405(g) to challenge an adverse determination by the Social Security Administration ("SSA"), which denied Plaintiff benefits. After Plaintiff filed a motion for judgment on the pleadings, the parties stipulated to remand the case to the SSA, where Plaintiff was awarded approximately $130,334 in past-due benefits. Plaintiff's counsel, Charles E. Binder ("Binder"), now moves for $32,583.50 in attorney's fees pursuant to 42 U.S.C. § 406(b) ("Section 406(b)"). For the reasons explained below, Binder's motion is granted.

## BACKGROUND

After representing Plaintiff before the SSA, (*see* Dkt. 10, at ECF[1] 116, 214), Binder filed this action on September 18, 2020. (Dkt. 1). After Plaintiff filed a motion for judgment on the pleadings on August 11, 2021, (Dkt. 15), the parties stipulated to remand the case to the SSA, (*see* Dkt. 23), which the Court so-ordered on December 1, 2021, (12/1/2021 Dkt. Order). The Court then awarded Plaintiff $6,300 in attorney's fees pursuant to the Equal Access to Justice Act

---

[1] Citations to "ECF" refer to the pagination generated by the Court's CM/ECF docketing system and not the document's internal pagination.

1

("EAJA"), 28 U.S.C. § 2412. (Joint Mot. for EAJA Fees, Dkt. 25; 12/6/2021 Dkt. Order.) On June 8, 2025, the SSA mailed Plaintiff a Notice of Award letter informing him that he would receive approximately $130,334 in past-due benefits, with 25% ($32,583.50) withheld as possible fees for his attorney. (Dkt. 26.[2]) By motion filed on June 17, 2025, Binder now seeks $32,583.50 for work performed before this Court.[3] (Dkt. 26, ¶ 12.)

Along with Binder's motion, counsel submitted a fee agreement demonstrating that Eichenstein retained Binder on a 25% contingency-fee basis, as well as itemized time records indicating that he and his firm spent a total of 29.90 hours litigating this matter before this Court. (Dkt. 26-4, at ECF 5.)

## DISCUSSION

### I. Timeliness

Motions for attorney's fees under Section 406(b) must be filed within the 14-day filing period proscribed by Rule 54(d) of the Federal Rules of Civil Procedure. *Sinkler v. Berryhill*, 932 F.3d 83, 91 (2d Cir. 2019). The 14-day period begins to run from when "counsel receives notice of the benefits award," and the law presumes that "a party receives communications three days after mailing." *Id.* at 87–89 & n.5. Furthermore, because Rule 54(d) allows judges to extend the

---

[2] The letter does not state the exact amount of past-due benefits awarded, but notes that the SSA "usually" withholds 25% for potential attorney's fees and, in this case, was withholding $32,583.50. (Dkt. 26, Exhibit C.)

[3] Binder's fees submissions suggest that there is also a pending SSA case for Plaintiff's "eligible child." (*See, e.g.*, Mem., Dkt. 26-2, at 3–4.) As Binder represents that "under no circumstances will the combined fees between 42 U.S.C. § 406(a) and § 406(b) exceed 25% of the past due benefits awarded to the Plaintiff and his eligible child," (*id.* at 4), the Court need not consider any fees awarded in conjunction with any Notices of Award for the child, particularly as the child's SSA application is not before the Court.

14-day deadline by court order, "district courts are empowered to enlarge that filing period where circumstances warrant." *Id.* at 89.

Plaintiff's counsel received the notice of benefits award dated June 8, 2025.  (Dkt. 26-3.)  This motion was filed on June 17, 2025.  (Dkt. 26.)  The motion is thus timely filed.

## II.     Reasonableness of the Requested Fee

### A.     Legal Standard

Section 406(b) of the Social Security Act provides that a court may award a "reasonable fee . . . not in excess of 25 percent of the total of the past-due benefits to which the claimant is entitled." 42 U.S.C. § 406(b)(1)(A).  If the contingency percentage is within the 25% cap, and there is no evidence of fraud or overreaching in making the agreement, a district court should test the agreement for reasonableness.  *Fields v. Kijakazi*, 24 F.4th 845, 853 (2d Cir. 2022).

To determine whether a fee is reasonable, a district court should consider (a) the character of the representation and the results the representative achieved; (b) whether counsel was responsible for a delay, unjustly allowing counsel to obtain a percentage of additional past-due benefits;[4] and (b) whether the requested amount is so large in comparison to the time that counsel spent on the case as to be a windfall to the attorney.  *See id.* at 849, 849 n.2, 853 (2d Cir. 2022).

With respect to whether a fee would be a "windfall," in *Fields* the Second Circuit emphasized that "the windfall factor does *not* constitute a way of reintroducing the lodestar method and, in doing so, . . . indicate[d] the limits of the windfall factor." *Id.* at 854.  Rather, "courts must

---

[4] This is because the amount of benefits a successful plaintiff receives is calculated from the date of onset up to the date the SSA awards benefits on remand.  *See Fields*, 24 F.4th at 849 n.2 ("Undue delay can be a particular problem in cases like these, in which past-due benefits are at stake.  Because delay increases the size of a plaintiff's recovery, it may also increase disproportionately a lawyer's contingent fee recovery); *see also Gisbrecht v. Barnhart*, 535 U.S. 789, 791 (2002) (noting that where "the attorney is responsible for delay," the attorney should not be allowed to "profit from the accumulation of benefits during the pendency of the case in court").

consider more than the de facto hourly rate" because "even a relatively high hourly rate may be perfectly reasonable, and not a windfall, in the context of any given case." *Id.* The Second Circuit instructed courts to consider (1) "the ability and expertise of the lawyers and whether they were particularly efficient, accomplishing in a relatively short amount of time what less specialized or less well-trained lawyers might take far longer to do"; (2) "the nature and length of the professional relationship with the claimant—including any representation at the agency level"; (3) "the satisfaction of the disabled claimant"; and (4) "how uncertain it was that the case would result in an award of benefits and the effort it took to achieve that result." *Id.* at 854–55. Ultimately, a district court may reduce the amount called for in the contingency fee agreement "only when [the court] finds the amount to be unreasonable," after considering the factors outlined above. *Id.* at 852–53.

In addition, if fee awards are made to a claimant's attorney under both the EAJA and Section 406(b), the attorney must refund the claimant the amount of the smaller fee. *Gisbrecht v. Barnhart*, 535 U.S. 789, 796 (2002); *Wells v. Bowen*, 855 F.2d 37, 48 (2d Cir. 1988) ("Once appropriate fees under [Section 406(b)] are calculated, the district court should order [the attorney] to return the lesser of either that amount or the EAJA award to his clients."); *Barbour v. Colvin*, No. 12-CV-0548 (ADS), 2014 WL 7180445, at *2 (E.D.N.Y. Dec. 10, 2014) (citing *Porter v. Comm'r of Soc. Sec.*, No. 06-CV-1150 (GHL), 2009 WL 2045688, at *4 (N.D.N.Y. July 10, 2009)).

### B.   Application

Here, Plaintiff retained Binder pursuant to a 25% contingency-fee agreement. (Dkt. 26-4, at ECF 2.) There are no allegations of fraud or overreaching with respect to the retainer agreement. Binder seeks the full 25% of Plaintiff's past-due benefits. At 29.9 hours of work, that would be

4

an effective hourly rate of $1,089.75 per hour. For the reasons explained below, the Court does not find that amount to be unreasonable in the context of this case.

To determine reasonableness, the Court first considers "the character of the representation and the results the representative achieved." *Fields*, 24 F.4th at 849. Here, Binder was able to obtain a joint stipulation of remand. (Dkt. 21.) Binder further secured a new hearing with the SSA, the completion of the administrative record, and the issuance of a new decision. (Dkt. 23.) Binder ultimately achieved a successful outcome for Plaintiff in the form of past and future benefits. (Dkt. 26-4, at ECF 7.) Thus, this factor does not warrant a downward adjustment. *See Velasquez v. Comm'r of Soc. Sec.*, No. 21-CV-0892 (PKC), 2025 WL 1249604, at *3 (E.D.N.Y. Apr. 30, 2025) (no downward adjustment warranted regarding this factor where the attorney secured a joint stipulation to remand and successfully obtained benefits from the SSA following further proceedings).

Second, the Court must determine whether counsel was responsible for unreasonable delays. *Fields*, 24 F.4th at 849. Here, there is no evidence or allegation that counsel was responsible for a delay. This Court remanded the case to the SSA for further proceedings on December 1, 2021. (Dkt. 23.) On June 16, 2022, an Administrative Appeals Judge of the SSA remanded the case to an Administrative Law Judge ("ALJ") for further review. (Dkt. 25, at ECF 14–18.) On June 28, 2023, ALJ Thomas Gray made a fully favorable decision on Plaintiff's case. (Dkt. 26-4, at ECF 20–28.) But the SSA did not mail a Notice of Award letter to Plaintiff until June 8, 2025—almost two years later. (Dkt. 26-4, at ECF 7–12.) Therefore, the SSA, rather than Binder, is responsible for any delay in resolving this case.[5]

---

[5] The Court notes that counsel could have reached out to the SSA in the two-year period between the favorable decision and the Notice of Award, though it declines to consider this "unreasonable delay" given the effect of such outreach on the SSA's timeline is unclear.

The third consideration with respect to reasonableness is whether the requested amount constitutes a "windfall." *Fields*, 24 F.4th at 849. The Court analyzes four factors in determining whether a requested amount qualifies as a windfall. *Id.* at 854–56.

First, with respect to "the ability and expertise of the lawyers and whether they were particularly efficient," the Court believes that 29.90 hours was a reasonable amount of time to spend on this matter. In *Fields*, a case involving the same plaintiff's counsel as here, the Second Circuit held that 25.80 hours reviewing an 863-page transcript, drafting a 19-page brief, and then obtaining a stipulation of dismissal demonstrated particular efficiency, justifying a *de facto* hourly rate of $1,556.98. 24 F.4th at 854. Here, the transcript was 557 pages, (Dkts. 10, 14) and the brief filed in support of Plaintiff's motion for judgment on the pleadings was 19 pages, (Dkt. 16). Although the length of the transcript here is considerably shorter than in *Fields*, the Second Circuit noted the particular efficiency of plaintiff's counsel in that case: "Binder & Binder's ability and expertise allowed it to accomplish in just 25.8 hours what lawyers might reasonably have taken twice as much time to do." 24 F.4th at 854 (noting that Binder & Binder associate Daniel S. Jones ("Jones") spent 22.70 hours on the case, and Binder spent 3.10 hours). Here, Jones spent 25.50 hours on the case, and Binder spent 4.40. (Dkt. 26-4, at ECF 5). Binder's experience as described in *Fields*,[6] 24 F.4th at 854, and Jones's experience as described in the briefing in this matter, (*see* Dkt. 26-3, ¶ 8), reasonably facilitated their efficient and successful work. Although the transcript length is lower here, the *de facto* hourly rate of $1,089.75 is also lower. Therefore, the Court finds that no downward adjustment is warranted on this factor.

---

[6] This includes handling thousands of administrative hearings and federal appeals in Social Security disability cases, lecturing on this topic for the New York State Bar Association, and testifying before the House Ways and Means Social Security Subcommittee. *Fields*, 24 F.4th at 854.

Second, with respect to "the nature and length of the professional relationship with the claimant—including any representation at the agency level," *Fields*, 24 F.4th at 855, the Court notes that Binder represented Plaintiff in front of the SSA before filing this suit. (*See* Dkt. 26-2, at 3 (noting counsel's representation of plaintiff since 2017).) In *Fields*, plaintiff's counsel had represented the plaintiff from the start of his agency proceedings, including four separate hearings before ALJs and multiple petitions to the SSA Appeals Council, further enabling plaintiff's counsel to efficiently brief its arguments before the district court, and distinguishing the case from others in which a windfall was found. *See id.* at 855. Here, Binder's representation of Plaintiff began on June 8, 2017, shortly after Plaintiff's application for benefits was denied. (Dkt. 10, at ECF 80–91, 116.) Binder represented Plaintiff through an unfavorable decision by ALJ McKenna, who reviewed the first denial, and an appeal of ALJ McKenna's unfavorable decision to the SSA Appeals Council on November 11, 2019. (Dkt. 10, at ECF 315.) Binder then finally represented Plaintiff through an appeal to this Court. (Dkt. 1.) As such, Binder's representation of Plaintiff is sufficiently comparable to Binder's representation of the claimant in *Fields*, and therefore the Court does not find that this factor warrants a downward adjustment.

Third, the Court evaluates the "satisfaction of the disabled client." *Fields*, 24 F.4th at 855. The claimant has submitted a letter to this court expressing that he is "completely satisfied with the work done" by his counsel and the results achieved. (Dkt. 30-1.) Further, Plaintiff states that he thought a 25% contingency fee was "reasonable then" and believes it to be "reasonable now." (*Id.*)

Lastly, the Court evaluates "how uncertain it was that the case would result in an award of benefits and the effort it took to achieve that result." *Fields*, 24 F.4th at 855. As in *Fields*, here, "the success of the claim was far from a sure thing, as evidenced by the fact that it was denied

7

multiple times at the agency level." *Id.* at 856. And here, as in *Fields*, Binder submitted "a 19-page memorandum of law that was 'specific and well supported,'" *id.*, so much so that the SSA Appeals Council noted many of the same deficiencies identified by Binder in its order remanding the case to an ALJ. (Dkt. 26-4, at ECF 16-17.) In *Fields*, the Second Circuit noted that "[a] windfall is more likely to be present in a case . . . where the lawyer takes on a contingency-fee representation that succeeds immediately and with minimal effort, suggesting very little risk of monetary recovery." 24 F.4th at 856. Here, Binder's significant efforts in reviewing the record and preparing well-written briefs were a significant factor in cutting down the uncertainty.

For the reasons explained above, the Court finds the requested amount to be reasonable.

## CONCLUSION

For the reasons explained above, the pending motion for attorney's fees under Section 406(b) is granted, and Binder is awarded $32,583.50. Upon receipt of this award, Binder shall promptly refund Plaintiff the $6,300 that represents the EAJA fees already received by counsel. The case remains closed.

SO ORDERED.

*/s/ Pamela K. Chen*
Pamela K. Chen
United States District Judge

Dated: December 22, 2025
      Brooklyn, New York

8